IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN C. BRATHWAITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 10-646-GMS |
| | ) |
| WARDEN PERRY PHELPS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

The plaintiff, Kevin C. Brathwaite ("Brathwaite"), an inmate at the James T. Vaughn

Correctional Center ("VCC), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1]

(D.I. 2.) He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to

28 U.S.C. § 1915. (D.I. 6.) Brathwaite has filed an amended complaint and second amended

complaint. (D.I. 9, 10.) The court now proceeds to review and screen the complaint pursuant to

28 U.S.C. § 1915 and § 1915A.

## I. BACKGROUND

Brathwaite has been housed in the security housing unit ("SHU") for almost seven years

without a "proper" legal classification hearing. (D.I. 2 at 1-2.) He has completed all SHU

programs and, under the prison point system, has reached the required points for housing in

general population. Brathwaite alleges that Warden Perry Phelps ("Phelps"), Deputy Warden

Pierce ("Pierce"), and Major Scarborough ("Scarborough") refuse to allow the counselors to hold

monthly reviews and annual classification hearings in violation of his right to due process,

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him
of a federal right, and that the person who caused the deprivation acted under color of state law.
*West v. Atkins,* 487 U.S. 42, 48 (1988).

double jeopardy, and to be free from cruel and unusual punishment. Brathwaite further alleges that classification personnel Linda Kemp ("Kemp") and Larry Savage ("Savage") have denied his right to an annual legal classification hearing since 2006 because he is on the "remain in SHU" list.[2] (D.I. 9 at 4.) Brathwaite has contacted the Delaware Department of Correction ("DOC") regarding the issue on numerous occasions, to no avail. (*Id.* at 5.)

On April 11, 2008, Brathwaite was terminated from his prison job. He was advised that Pierce and Scarborough ordered his dismissal. (D.I. 2 at 3.) Brathwaite was rehired for the same position on May 10, 2009, and March 19, 2010, and worked for approximately two days on both occasions when S/Lt. Karen Hawkins ("Hawkins") ordered his dismissal. (*Id.* at 4.) Brathwaite submitted grievances and wrote letters regarding the issue to Phelps, Pierce, Scarborough, Ronald Hosterman ("Hosterman"), and Kenneth Milborne ("Milborne"). (*Id.* at 3.)

On October 17, 2008, Brathwaite was taken to the "hole." He was informed that his placement was ordered by Marcello Rispoli ("Rispoli") and was the result of a 2004 incident wherein he had fifty-seven days of additional time to serve. After spending eleven to twelve days there, Brathwaite proved that he had previously completed the time and was transferred from "the hole." (*Id.* at 5-6, 18.)

Brathwaite has chronic pain due to a shoulder injury. Due to his condition, in 2000, the medical department issued a memorandum to use double cuffs, instead of single cuffs, when handcuffing Brathwaite. (D.I. 2.) The memo has been renewed annually for eight years. The medical department renewed the memo in November 2008, but deputy warden Christopher Klein

---

[2]The court docket incorrectly lists "classification personnel" as a defendant. Brathwaite used the words to describe Kemp and Savage. The clerk of court is directed to terminate "classification personnel" as a defendant.

("Klein") ignored and/or "denied the memo. (D.I. 2 at 6, 10.) In addition, Hawkins issued a memo to no longer double cuff the plaintiff. Brathwaite also alleges that Dr. Desrosiers ("Dr. Desrosiers") conspired with security to cause him pain and suffering when she stated that Brathwaite never had a medical memo that required the use double cuffs, and that she had monitored the shoulder and there was nothing wrong with it. (D.I. 10.) While not clear, it appears that Brathwaite was single cuffed for a four and one-half month period.[3] He alleges the single cuffing caused him pain and suffering. Because the use of single cuffs caused him pain, Brathwaite would not leave his cell. He alleges that from November 2008 thru March 2009 Klein and Scarborough caused him to be denied visits, recreation, showers, medical appointments, phone calls and legal calls. (D.I. 2, at 7.)

Brathwaite further alleges that on one occasion after his shower, Lt. Furman ("Furman") told him to return to his cell cuffed with one handcuff behind his back and, if he refused, he would be physically removed from the shower. (D.I. 2 at 11.) As a result of the use of the single cuff, swelling occurred. Medical arrived, but Furman would not allow Brathwaite to see medical unless he agreed to leave his cell with a single cuff. Brathwaite refused and Furman told medical that Brathwaite refused medical treatment. Brathwaite wrote letters and grievances to Phelps, Pierce, Klein, Scarborough, Hawkins, Harvey, Furman, and Cpl. Dutton ("Dutton"). (*Id.* at 15.)

On August 30, 2010, Brathwaite was treated at the Dover Medical Center for chronic back pain. (D.I. 10 at 5.) The back specialist increased his pain medication, ordered an anti-inflammatory medication, and ordered a firmer mattress. Brathwaite alleges that Dr. Desrosiers

---

[3]On February 5, 2009, Dr. McDonald treated Brathwaite and determined that the use of one set of handcuffs was too painful for Brathwaite.

disregarded the orders of the back specialist and refused to provide him "anything that would alleviate his pain and suffering." (*Id.*)

Brathwaite was mistakenly given incorrect medication. The medication was given in a crushed form and, because of mistakes, Brathwaite asked to examine the medication before it was crushed to verify he received the correct medication. Brathwaite filed a grievance on the issue and was successful. For a time the procedure was followed, but then the medical staff began to crush the medication in another building before giving it to Brathwaite. Nurse Carol Biannchi ("Biannchi") would not comply with the procedure and allow Brathwaite to see the medication before it was crushed. Brathwaite complained of noncompliance with the procedure and, on October 13, 2010, Dr. Desrosiers told the nurses to discontinue the medication.

The defendants are sued in their individual and official capacities. Brathwaite seeks compensatory and punitive damages.

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Brathwaite proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent

-4-

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Brathwaite leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, –U.S.– , 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal

elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded

facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must

determine whether the facts alleged in the complaint are sufficient to show that Brathwaite has a

"plausible claim for relief."[4] *Id.* at 211. In other words, the complaint must do more than allege

Brathwaite's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of

misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to

relief." *Iqbal*,129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Classification

Brathwaite raises due process claims relative to his classification, SHU housing

assignment, and transfer to "the hole" for eleven or twelve days. Brathwaite does not have a

protectable liberty interest in a particular custody classification and, therefore, cannot prevail on

his claim. It is well established that an inmate does not possess a liberty interest arising from the

Due Process Clause in assignment to a particular custody level or security classification or a

place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-222 (2005); *Olim v.

Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976);

---

[4]A claim is facially plausible when its factual content allows the court to draw a
reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at
1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer
possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are
'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and
plausibility of 'entitlement to relief.'" *Id.*

*Montayne*, 427 U.S. at 243; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). The custody

placement or classification of state prisoners within the State prison system is among the "wide

spectrum of discretionary actions that traditionally have been the business of prison

administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. Indeed, inmates

have "no legitimate statutory or constitutional entitlement" to any particular custodial

classification even if a new classification would cause that inmate to suffer a "grievous loss."

*Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Therefore, this court finds that Brathwaite fails to

state a claim of constitutional dimension with respect to his custody level classification and

housing in SHU and his claim will be dismissed accordingly.

Moreover, neither Delaware law nor Delaware Department of Correction regulations

create a liberty interest in a prisoner's classification within an institution. *See* Del. Code Ann.

11, § 6529(e). "As long as the conditions or degree of confinement to which [a] prisoner is

subjected is within the sentence imposed upon him and is not otherwise violative of the

Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison

authorities to judicial oversight." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (finding that

"administrative segregation is the sort of confinement that inmates should reasonably anticipate

receiving at some point in their incarceration."). Courts have found that a prisoner's "procedural

due process rights are triggered by deprivation of a legally cognizable liberty interest. For a

prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on

the inmate in relation to the ordinary incidents of prison life.'" *Mitchell v. Horn,* 318 F.3d 523,

531 (3d Cir. 2003) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).

The Due Process Clause itself confers no liberty interest in freedom from state action

taken "within the sentence imposed." *Sandin*, 515 U.S. at 480 (quoting *Hewitt v. Helms*, 459 U.S. at 468). In deciding whether a protected liberty interest exists under *Sandin*, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d at 532 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). The Third Circuit has held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin. *See Young v. Beard*, 227 F. App'x 138 (3d Cir. 2007) (not published). Thus, with regard to the limited duration of time Brathwaite spent in "the hole", he fails to state constitutional claim on the facts alleged. *See Henderson v. Kerns-Barr*, 313 F. App'x 451 (3d Cir. 2008). Based upon the relatively short time Brathwaite was confined to "the hole", lacks the requisite liberty interest to implicate a due process violation.

To the extent Brathwaite raises a claim that he has not received monthly or annual classification hearings, again he cannot prevail. If "restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentenced imposed by a court of law,'" then the prisoner does not have a "protected liberty interest" and the "state owed him no process before placing him in disciplinary confinement." *Mitchell v. Horn*, 318 F.3d at 531; *see also Henderson v. Kerns-Barr*, 313 F. App'x 451 (3d Cir. 2008)(assuming that the plaintiff was not afforded the protections called for by *Wolff*, because the sanction of 90 days disciplinary confinement did not affect the inmate's release date, there was no liberty interest and, therefore, no trigger of due process rights). Inasmuch as Brathwaite has no constitutional right to avoid such classification, he has no right to process surrounding it.

-8-

For the above reasons, the court will dismiss as frivolous the due process claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## B. Employment

Brathwaite complains that he was unlawfully removed from his prison employment on three separate occasions. Brathwaite, however, has no constitutional right to prison employment. Indeed, prisoners have no entitlement to a specific job, or even to any job. *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989). It well established that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the fourteenth amendment. *Id.*; *see also Brian v. Werner,* 516 F.2d 233, 240 (3d Cir. 1975) (inmates expectation of keeping job is not a property interest entitled to due process protection); *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir. 1980) (prisoner's expectation of keeping prison job does not amount to a property interest entitled to due process protection); *Adams v. James,* 784 F.2d 1077, 1079 (11th Cir. 1986) (assignment to job as law clerk does not invest inmate with a property interest in continuation as such); *Ingram v. Papalia,* 804 F.2d 595, 596 (10th Cir. 1986) (Constitution does not create a property interest in prison employment); *Flittie v. Solem,* 827 F.2d 276, 279 (8th Cir. 1987) (inmates have no constitutional right to be assigned a particular job).

For the above reasons, the court will dismiss as frivolous the employment dismissal claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## C. Excessive Force

Brathwaite was single cuffed even though his long-standing medical condition required double-cuffs. He alleges the use of double cuffs caused him pain and suffering.

When analyzing an excessive force claim under the Eighth Amendment, the court must

determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (citations omitted). Use of force is actionable under § 1983 when it exceeds "that which is reasonable and necessary under the circumstances." *Davidson v. O'Lone*, 752 F.2d 817, 827 (3d Cir. 1984). The court must determine whether the force was applied in good faith by weighing the following factors: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *Davis v. Carroll*, 390 F. Supp. 2d 415, 419 (D. Del. 2005) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Brathwaite has alleged what appear to be cognizable and non-frivolous excessive force claims against Klein, Hawkins, Furman, and Dr. Desrosiers. With regard Phelps, Pierce, Scarborough, Harvey, and Dutton, the complaint does not allege personal involvement sufficient to rise to the level of a § 1983 violation. Brathwaite merely alleges that he wrote letters and grievances to them complaining about single cuff use. Alleged after-the fact participation is not enough to establish personal involvement. *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not published) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation).

For the above reasons, the court will dismiss as frivolous the excessive force claims against Phelps, Pierce, Scarborough, Harvey, and Dutton pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### D. Conditions of Confinement

Brathwaite alleges that from November 2008 thru March 2009, Klein and Scarborough caused him to be denied visits, recreation, showers, medical appointments, phone calls and legal calls. (D.I. 2, at 7.) The allegations apparently stem from Brathwaite's refusal to leave his cell during the time he single cuffed, rather than double cuffed.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

The conditions of confinement claims are very general and deficiently pled. Although not clear, they appear to be ancillary to the excessive force claim. After reviewing the sparse allegations, the court determines that the facts as alleged fail to show that Brathwaite has a plausible claim for relief. Therefore, the court will dismiss as frivolous the conditions of confinement claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### IV. CONCLUSION

For the above reasons, the court will dismiss all claims against Warden Perry Phelps,

Deputy Warden David Pierce, James Scarborough, Marcello Rispoli, Ronald Hosterman, Linda Kemp, Larry Savage, and the Delaware Department of Correction, as well as the classification/ housing assignment due process claims, the employment claim, and the conditions of confinement claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Brathwaite may proceed with his excessive force claims against the defendants Deputy Warden Christopher Klein, Karen Hawkins, Lt. Furman, and Dr. Desrosiers and the medical needs claims against Dr. Desrosiers and Nurse Carol Biannchi.

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

_____ , 2010
Dec 8

Wilmington, Delaware

-12-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KEVIN C. BRATHWAITE,          )
                              )
        Plaintiff,            )
                              )
    v.                        ) Civ. Action No. 10-646-GMS
                              )
WARDEN PERRY PHELPS, et al.,  )
                              )
        Defendants.           )

**ORDER**

At Wilmington this 4th day of _____, 2010, for the reasons set forth in

the Memorandum issued this date, it is hereby ordered that:

1. The claims against Warden Perry Phelps, Deputy Warden David Pierce, James
Scarborough, Marcello Rispoli, Ronald Hosterman, Linda Kemp, Larry Savage, and the
Delaware Department of Correction, as well as the classification/housing assignment due process
claims, the employment claim, and the conditions of confinement claim are **dismissed** as
frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

2. The court has identified what appear to be a cognizable and non-frivolous excessive
force claims against the defendants Deputy Warden Christopher Klein, Karen Hawkins, Lt.
Furman, and Dr. Desrosiers and the medical needs claims against Dr. Desrosiers and Nurse Carol
Biannchi. The plaintiff is allowed to **proceed** against Klein, Hawkins, Furman, Dr. Desrosiers,
and Biannchi on these claims.

IT IS FURTHER ORDERED that:

1. The clerk of the court shall cause a copy of this order to be mailed to the plaintiff.

2. Pursuant to Fed. R. Civ. P. 4(c)(3) and (d)(1), the plaintiff shall provide the court with

"USM-285" forms for the **remaining defendants Deputy Warden Christopher Klein, Karen Hawkins, Lt. Furman, Dr. Desrosiers and Nurse Carol Biannchi** as well as for the **Attorney General of the State of Delaware**, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to DEL. CODE ANN. tit. 10 § 3103(C). **In addition, the plaintiff shall provide the court with sufficient services copies of the complaint, amended complaint, and second amended complaint.** (D.I. 2, 9, 10.) **The plaintiff is notified that the United States Marshal Service ("USMS") will not serve the complaint, amended complaint, and second amended complaint until all "U.S. Marshal 285" forms have been received by the clerk of court. Failure to provide complete "U.S. Marshal 285" forms and service copies of the complaint, amended complaint, and second amended complaint for the remaining defendants and the attorney general within 120 days from the date of this order may result in the complaint being dismissed or the defendant being dismissed pursuant to Federal Rule of Civil Procedure 4(m).**

3.   Upon receipt of the form(s) required by paragraph 2 above, the USMS shall forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon each of the defendants so identified in each 285 form.

4.   A defendant to whom copies of the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form have been sent, pursuant to Fed. R. Civ. P. 4(d)(1), has thirty days from the date of mailing to return the executed waiver form. Such a defendant then has sixty days from the date of mailing to file its response to the complaint, pursuant to Fed. R. Civ. P. 4(d)(3). A defendant residing outside this jurisdiction has an additional thirty days to return the waiver form and to respond to the complaint.

-2-

5. A defendant who does not timely file the waiver form shall be personally served and shall bear the costs related to such service, absent good cause shown, pursuant to Fed. R. Civ. P. 4(d)(2). **A separate service order will issue in the event a defendant does not timely waive service of process.**

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. **NOTE:** \*\*\* When an amended complaint is filed prior to service, the court will **VACATE** all previous Service Orders entered, and service **will not take place**. An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). \*\*\*

8. **Note:** \*\*\* Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. \*\*\*

CHIEF, UNITED STATES DISTRICT JUDGE

-3-