IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN C. BRATHWAITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 10-646-GMS |
| | ) |
| DEPUTY WARDEN CHRISTOPHER | ) |
| KLEIN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

The plaintiff, Kevin C. Brathwaite ("Brathwaite"), a prisoner housed at the James T. Vaughn Correctional Center, Smyrna, Delaware filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. He proceeds *pro se* and was granted leave to proceed *in forma pauperis*. (D.I. 6.) The court has jurisdiction pursuant to 28 U.S.C. 1331. Before the court are the parties' motions for summary judgment (D.I. 84, 86, 104) and Brathwaite's motion to compel (D.I. 136) and motion for hearing (D.I. 138).

## I. BACKGROUND

The original complaint has been amended. (D.I. 2, 9, 10, 99.) Numerous claims and defendants have been dismissed, and the case proceeds on excessive force claims against the defendants Deputy Warden Christopher Klein ("Klein"), Karen Hawkins ("Hawkins"), Lt. Furman ("Furman"), and Dr. Desrosiers ("Dr. Desrosiers") and medical needs claims against Dr. Desrosiers, Nurse Carol Biannchi ("Biannchi"), and Klein.

### A. Allegations

As set forth in the complaint, Brathwaite alleges that he has chronic pain due to a shoulder injury. Because of his condition, the medical department issued a memorandum to use

double cuffs, not single cuffs, when handcuffing Brathwaite. The memo was renewed annually for eight years. The medical department renewed the memo in November 2008, but Klein ignored and/or "denied the memo. In addition, Hawkins issued a memo to no longer double cuff Brathwaite. It is further alleged that Dr. Desrosiers conspired with security to cause him pain and suffering when she stated that Brathwaite never had a medical memo that required the use double cuffs, and that she had monitored the shoulder and there was nothing wrong with it. It appears that Brathwaite was single cuffed for a four and one-half month period. He alleges the single cuffing caused him pain and suffering and he would not leave his cell because the use of single cuffs caused him pain. (D.I. 2, at 6, 7, 10; D.I. 10.)

Brathwaite further alleges that on one occasion after his shower, Furman told him to return to his cell cuffed with one handcuff behind his back and, if he refused, he would be physically removed from the shower. As a result of the use of the single cuff, swelling occurred. Medical arrived, but Furman would not allow Brathwaite to see medical unless he agreed to leave his cell with a single cuff. Brathwaite refused and Furman told medical that Brathwaite refused medical treatment. (D.I. 2 at 11, 15.)

On August 30, 2010, Brathwaite was treated at the Dover Medical Center for chronic back pain. The back specialist increased his pain medication, ordered an anti-inflammatory medication, and ordered a firmer mattress. Brathwaite alleges that Dr. Desrosiers disregarded the orders of the back specialist and refused to provide him "anything that would alleviate his pain and suffering." Brathwaite also alleges that Klein and Dr. Desrosiers would not allow him to take possession of a firm mattress after being served with process in the instant case. (D.I. 10 at 5; D.I. 99.)

2

Brathwaite also alleges that he was mistakenly given incorrect medication. The medication was given in a crushed form and, because of mistakes, Brathwaite asked to examine the medication before it was crushed to verify he received the correct medication. Brathwaite filed a grievance on the issue and was successful. For a time the procedure was followed, but then the medical staff began to crush the medication in another building before giving it to Brathwaite. Biannchi would not comply with the procedure to allow Brathwaite to see the medication before it was crushed. Brathwaite complained of noncompliance with the procedure and, on October 13, 2010, Dr. Desrosiers told the nurses to discontinue the medication.

**B.     Relevant Facts**

The record reflects that Brathwaite has had medical problems with his right shoulder since 2000. Medical progress notes from October through December 2005, and particularly those dated October 20, 2005, indicate the temporary need for double cuffs. An October 20, 2005 memorandum to prison staff indicates Brathwaite needs to be doubled cuffed for medical reasons. A notation states, "please comply with [the] order until reviewed again in 3/06." The memo was approved on March 10, 2006. On November 22, 2008, Brathwaite submitted an emergency medical request seeking renewal of the double-cuffing memo. Therein, Brathwaite indicated that he had been double-cuffed for over four years due to chronic shoulder pain and now "some idiot" told Brathwaite that he never had a memo. The response indicates that the memo was to be renewed once a year, but never was, and Brathwaite was referred to a provider for follow-up. On November 26, 2008, medical personnel Lisa D. Sugar ("Sugar") authored a medical memorandum request to security to double cuff Brathwaite due to rotator cuff tendonitis with right should pain that increases with single cuff behind back. Sugar noted that the MRI

report supported the medical memorandum. The memorandum was denied on December 11, 2008 by Klein. (D.I. 92, exs. A, B, B-2, D, F, G; D.I. 97, exs. A, B.)

Brathwaite's affidavit, attached to the second amendment to the complaint, states that on February 5, 2009, Brathwaite was evaluated by Dr. McDonald ("Dr. McDonald"), who conducted range of motion tests, and determined that the use of one set of handcuffs was too painful for Brathwaite. However, on March 26, 2009, Brathwaite received a Department of Correction memorandum advising him that Dr. Desrosiers had related that she had consistently checked on Brathwaite's medical status and there was no medical reason for him to be double cuffed. The memo added that Brathwaite was monitored by medical, at present there was no medical need and, therefore, it was "the end of the conversation." An x-ray dated May 8, 2009, indicates minimal degenerative joint disease of the right shoulder. Brathwaite advises that "from May 2009 to the present date, double-cuffs are always used anytime [he] is removed from his cell to be transported anywhere."[1] (D.I. 10; D.I. 89, ex. Q; D.I. 90, ex. C; D.I. 102, ¶ 3.)

On August 30, 2010, Dr. DuShuttle ("Dr. DuShuttle") issued an order for Brathwaite that recommended he have a "more firm mattress due to disc herniation." The mattress issue was discussed with Dr. DuShuttle and, when the sleeping accommodations were described to Dr. DuShuttle (i.e., three to four inch foam on a metal board), he felt that it was "definitely firm enough and [he] would not recommend a change or addition." (D.I. 74, exs. C, D.)

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

---

[1] The parties did not provide the court with exhibits regarding the renewal of the double cuffing procedure.

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-587 ("Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322. The same standards and burdens apply on cross-motions for summary judgment. *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

The medical defendants Dr. Desrosiers and Biannchi ("medical defendants") move for summary judgment on the grounds that Brathwaite has failed to prove his claims of constitutional violations. The State defendants Klein, Hawkins, and Furman ("State defendants") move for summary judgment on the grounds that the record does not support Brathwaite's claims, they are immune from suit on the claims raised against them in their official capacities, and they have qualified immunity. Brathwaite moves for summary judgment on the grounds that the filings and exhibits support his allegations.[2]

## III. DISCUSSION

### A. Eleventh Amendment

The State defendants move for summary judgment on the basis of Eleventh Amendment immunity to the extent that claims are raised against them in their official capacities. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. &*

---

[2]Brathwaite relies upon his exhibits and arguments presented in opposition to the defendants' motions for summary judgment to support his motion for summary judgment. (D.I. 104.)

*Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009) (unpublished). Accordingly, § 1983 claims for monetary damages against a state, state agency, or a state official in his official capacity are barred by the Eleventh Amendment. *See id.*

Based upon the foregoing, the court will grant the State defendants' motion for summary judgment as to the claims for monetary damages raised against them in their official capacities.

### B.  Medical Needs

The medical defendants and Brathwaite seek summary judgment on the medical needs issues. Brathwaite alleges that the medical defendants violated his constitutional rights when they refused to issue a medical memorandum that required he be double cuffed when transported, failed to provide him with a firm mattress, disregarded the orders of the back specialist and refused to provide medical care to alleviate his pain and suffering, and refused to allow him to see his medication before it was crushed and discontinued medication.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a

substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (unpublished) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107. Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

### 1. Double Cuffing

The medical defendants contend that summary judgment is appropriate because the medical records reflect that Brathwaite was seen on November 26, 2008, and it was determined that it was no longer medically necessary for him to be double cuffed. Brathwaite contends that summary judgment is appropriate on his behalf because Dr. Desrosiers made numerous attempts to stop the enforcement of a medical memo that sought double cuffing.

The medical defendants reliance upon the response to Brathwaite's emergency medical request that indicates that Brathwaite will be referred to the provider for follow-up and that he was seen on November 26, 2008 is unavailing. (*See* D.I. 85, ex. B.) The record reflects that, on the same date, a medical memo issued requesting double cuffing for Brathwaite. With regard to Brathwaite's motion, it is far from clear that Dr. Desrosiers "interfered" with the enforcement of the medical memo for double cuffing, even though she opined that it was not medically necessary, while it appears that Dr. McDonald and Sugar, believed that it was.

Because there remain genuine issues of fact, the court will deny the medical defendants' and Brathwaite's motions for summary judgment on the issue of double cuffing.

### 2. Mattress

On August 30, 2010, Dr. DuShuttle issued an order for Brathwaite that recommended he have a "more firm mattress due to disc herniation."[3] (D.I. 74, ex. C.) Medical records indicate that the mattress issue was discussed with Dr. DuShuttle. When the sleeping accommodations were described to Dr. DuShuttle (i.e., three to four inch foam on a metal board), he felt that it was "definitely firm enough and [he] would not recommend a change or addition." (*Id.* at ex. D.) The medical defendants move for summary judgment on the grounds that Brathwaite's claims amount to nothing more than a mere disagreement.

The record reflects that, upon further reflection, Dr. DuShuttle determined that it was not medically necessary for Brathwaite to have a firm mattress. Brathwaite's claim amounts to

---

[3]When Brathwaite amended his complaint on January 12, 2012, he added a medical needs claim against Klein that Klein would not allow him to have a medically necessary firm mattress in his cell. The complaint was amended after State defendants filed their motion for summary judgment and, therefore, they did not address the issue in their motion for summary judgment.

disagreement with medical treatment and does not rise to the level of a constitutional violation.

Accordingly, the court will grant the medical defendants' motion for summary judgment on the issue of a firm mattress and will deny Brathwaite's motion for summary judgment on the same issue. In addition, because it is evident that no reasonable jury could find for Brathwaite on this issue, the court will sua sponte grant summary judgment to Klein on the mattress issue.[4]

### 3. Medication

The medical defendants move for summary judgment on the medication claim on the grounds that there is no evidence of record to suggest that their refusal to allow Brathwaite to see his medication prior to being crushed is a serious medical need. They argue that this has not been ordered by a physician and there is no obvious necessity that requires Brathwaite see his medication before it is crushed to avoid a lifelong handicap or permanent loss. In addition, the medical defendants argue that the issue is moot given that in Brathwaite's response he states that Dr. Desrosiers stopped administering the medication in light of his complaints.[5]

The complaint alleges that on several occasions Brathwaite was given the wrong

---

[4] "It has long been established that, under the right circumstances, district courts are entitled to enter summary judgment sua sponte." *Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir. 2006) (quoting *Gibson v. Mayor and Council of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004)). This may not occur, however, "without 'placing the adversarial party on notice that the court is considering a sua sponte summary judgment motion' and providing that party 'an opportunity to present relevant evidence in opposition to that motion.'" *Couden*, 446 F.3d at 500 (other citations omitted). Notice is satisfied if "the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Id.* (other citations and quotation marks omitted). Here, the issues were raised by the medical defendants, Brathwaite responded, and it was evident that the court would reach the issue.

[5] The medical defendants overlook the claims that medical treatment was not provided to alleviate pain and suffering and that medication was stopped. The issues are not moot. Were the claims raised solely int the context of a motion for injunctive relief, then the issues might be considered moot.

medication and, as a result, Brathwaite submitted a grievance to allow him to see a pill in solid form prior to the time it was administered to him in a crushed form. On one occasion, Brathwaite slept for two days after he was administered the wrong medication. (D.I. 89, ex. Brathwaite prevailed on the grievance, but Biannchi refused to crush the medication in front of Brathwaite and Dr. Desrosiers told the nurses to discontinue the medication altogether. (*See* D.I. 10, ex. A-21.)

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Atkinson v. Taylor*, 316 F.3d 257, 272 (3d Cir. 2003) (citation omitted). A medical need is also serious where the denial of treatment would result in the "unnecessary and wanton infliction of pain," *Estelle*, 429 U.S. at 103, or a "life-long handicap or permanent loss," *Lanzaro*, 834 F.2d at 347. Subjectively, prison officials must exhibit "deliberate indifference" to those needs. *Atkinson*, 316 F.3d at 273. The Third Circuit has recognized that the distribution of incorrect medication that causes harm or worsens pain may rise to the level of deliberate indifference. *See Bickel v. Miller*, 446 F. App'x 409, 412 (3d Cir. 2011) (unpublished).

The court is not persuaded by the medical defendants' position that there is there is no evidence of record to suggest that their refusal to allow Brathwaite to see his medication prior to being crushed is a serious medical need. As discussed above, a grievance attached to the indicates that Brathwaite had an adverse reaction after being administered the wrong medication. In addition, the medical defendants do not address that part of the claim that alleges Dr. Desrosiers refused to provide medical care to alleviate Brathwaite's pain, and that he discontinued needed medication rather than comply with the grievance committee's finding in

Brathwaite's favor. With regard to Brathwaite's cross-motion for summary judgment, the court finds there remain genuine issues of fact. Therefore, the court will deny the medical defendants' and Braithwaite's motions for summary judgment on the medication issue.

### C. Use of Force

State defendants move for summary judgment on the use of force claim as does Brathwaite.[6] Brathwaite contends that he was single cuffed even though his long standing medical condition required double cuffs and that the use of double cuffs caused him pain and suffering.

When analyzing an excessive force claim under the Eighth Amendment, the court must determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (citations omitted). Use of force is actionable under § 1983 when it exceeds "that which is reasonable and necessary under the circumstances." *Davidson v. O'Lone*, 752 F.2d 817, 827 (3d Cir. 1984). The court must determine whether the force was applied in good faith by weighing the following factors: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *Davis v. Carroll*, 390 F. Supp. 2d 415, 419 (D. Del. 2005) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

State defendants did not provide any exhibits or affidavits in support of their motion for

---

[6]Brathwaite also raised an excessive force claim against Dr. Desrosiers with regard to the use of double cuffs. Dr. Desrosiers moved for summary judgment on the double cuffing issue as raised in the medical needs context, but not in the use of force context.

12

summary judgment.[7] The only citations to the record are those that reference filings by Brathwaite. [T]he court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011) (unpublished); *see also Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 285 (3d Cir. 2001) (The court should not "be required to scour the . . . records and transcripts, without specific guidance, in order to construct specific findings of fact" to support its memorandum opinion and order.). As noted by the Seventh Circuit, "Judges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pa., Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (citations omitted).

State defendants have not pointed to specific evidence to support their motion for summary judgment. Hence, the court is unable to determine which facts are material. Accordingly, the court concludes that, at this juncture, State defendants have failed to produce enough evidence to compel a reasonable jury to find for them on the use of force issue. In addition, the court finds there remain issues of fact regarding double cuffing inasmuch as there is no explanation provided by State defendants for the denial of the double cuffing request, despite the request from the medical department. Because there remain genuine issues of fact, the court will deny State defendants' and Brathwaite's motions for summary judgment on the issues of use

---

[7]It was not until they filed their reply to Brathwaite's opposition that State defendants submitted two exhibits to support their reply. (D.I. 96, 97.) Medical progress notes from October through December 2005, and particularly those dated October 20, 2005, indicate the temporary need for double cuffs. (D.I. 97, ex. A.) Exhibit B, dated October 20, 2005, is a memorandum to prison staff that indicates Brathwaite needs to be doubled cuffed for medical reasons. (*Id.* at B.) State defendants contend that "records show that since 2006, the medical providers did not review the temporary memo . . . or determine a medical necessity for [Braithwaite] to use two-sets of handcuffs during escort," but fail to point to specific evidence to support their position. (*See* D.I. 96, ¶ 2.)

force. The court will also deny without prejudice State defendants' motion for summary judgment on the issue of qualified immunity.[8]

## IV. MISCELLANEOUS MOTIONS

### A. Motion to Compel

Brathwaite moves the court to compel the defendants to produce medical records for the time period of September 2012 through December 2012. (D.I. 136.) The court will deny the motion. Brathwaite seeks the production of records for a time period that is not relevant to the instant complaint.

### B. Motion for Hearing

Brathwaite moves the court for a hearing to determine the relief to which he is entitled. (D.I. 138.) The court will deny the motion. A hearing is not necessary at this time.

## V. CONCLUSION

For the above stated reasons, the court will: (1) grant in part and deny in part the medical defendants' motion for summary judgment (D.I. 84); (2) grant in part and deny in part the State defendants' motion for summary judgment (D.I. 86); (3) deny the plaintiff's motion for summary judgment (D.I. 104); (4) deny the plaintiff's motion to compel (D.I. 136); and (4) deny the plaintiff's motion for a hearing (D.I. 138).

An appropriate order will be entered.

July 19, 2013
Wilmington, Delaware

CHIEF UNITED STATES DISTRICT JUDGE

---

[8]Given there remain material factual disputes, it is inappropriate to grant summary judgment on the issue of qualified immunity. *See Curley v. Klem*, 499 F.3d 199, 208, 211 n.12 (3d Cir. 2007).

14